1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

ROBERTO G. L.,

                    Plaintiff,

          v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

CASE NO. 2:22-CV-1678-DWC

ORDER AFFIRMING DEFENDANT'S
DECISION DENYING BENEFITS

11
12
13
14
15
16

        Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial

17  of his applications for social security insurance (SSI) benefits. Pursuant to 28 U.S.C. § 636(c),

18  Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before the

19  undersigned. After considering the record, the Court finds no reversable error and affirms the

20  Commissioner's decision to deny benefits.

21                                   **I. BACKGROUND**

22        Plaintiff filed an application for SSI on May 21, 2019 alleging disability beginning

23  September 10, 2010. Administrative Record (AR) 19. After his application was denied initially

24  and upon reconsideration, he filed a written request for a hearing. *Id.* A telephonic hearing was

1  held before an administrative law judge (ALJ) on March 19, 2020 at which Plaintiff was

2  represented and testified. *Id*. On September 23, 2021 the ALJ issued a written decision denying

3  Plaintiff's claim. AR 19-32. The Appeals Council then denied Plaintiff's request for review,

4  making the ALJ's decision final.

5                    **II. THE ALJ'S FINDINGS**

6         The ALJ found Plaintiff has the severe impairments of: chronic angle-closure glaucoma

7  of the left eye, status-post a March 2019 aqueous shunt, August 2019 micropulse transscleral

8  cyclophotocoagulation, and May 2021 penetrating keratoplasty; central corneal opacity of the

9  left eye; central corneal opacity of the right eye; schizophrenia; post-traumatic stress disorder

10  (PTSD); attention deficit hyperactivity disorder (ADHD); antisocial personality disorder; major

11  depressive disorder; generalized anxiety disorder, and; substance abuse disorder in remission.

12  AR 22; 20 CFR § 416.920(c).

13         The ALJ found the combination of Plaintiff's impairments do not meet or equal any

14  Listed Impairment. AR 23.

15         The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform

16  medium work as defined by 20 CFR § 416.967(c) except:

17         … he can never climb ladders, ropes, and scaffolds. He can frequently climb ramps
           and stairs. He can frequently balance, stoop, crouch, and crawl. He can occasionally
18         read with font of at least fourteen points due to limited near and far visual acuity.
           He can never discriminate small objects at a distance. He can frequently
19         discriminate large objects at fifteen feet away. He must avoid all exposure to
           hazards such as unprotected heights or machinery with moving, mechanical parts.
20         He is able to understand, remember, and carry out simple, routine instructions. He
           can perform simple, routine tasks. He can never interact with the general public. He
21         can occasionally interact with co-workers and supervisors. He is able to adapt to
           normal, routine changes in the work environment. He is unable to set goals
22         independently but is able to understand and follow employer set goals.

23  AR 25.

24

1    The ALJ found that a person of Plaintiff's age, with his education, work experience, and

2   RFC, could perform jobs existing in significant numbers in the national economy such as Dry

3   Janitor, Church Custodian, and Housekeeper. AR 31.

4                                    **III. STANDARD**

5    Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of

6   social security benefits if the ALJ's findings are based on legal error or not supported by

7   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

8   Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the

9   Commissioner's decision must be affirmed if it is supported by substantial evidence and free of

10  harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

11  2008).

12   Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of

13  Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The Supreme Court describes it as "more

14  than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means

15  only—such relevant evidence as a reasonable mind might accept as adequate to support a

16  conclusion." *Id*. (internal quotations omitted).

17                                   **IV. DISCUSSION**

18  **A. Plaintiff's Testimony**

19   Plaintiff argues the ALJ improperly rejected some of his testimony.

20  1. The ALJ's Findings

21   After noting that Plaintiff has been diagnosed with a number of mental disorders,

22  including but not limited to schizophrenia, PTSD, ADHD, anxiety, and major depressive

23  disorder, the ALJ summarized Plaintiff's testimony as follows:

24

He reports persistent **auditory hallucinations**, which affect his ability to concentrate (Hearing Testimony). He reports **persistent anxiety**, characterized by **panic attacks** (Hearing Testimony). He reports a rapid heartbeat during a typical panic attack (Hearing Testimony). He indicates that a panic attack lasts for up to three hours (Hearing Testimony). He also reports frequent **depressive episodes**, which occur up to four times a week (Hearing Testimony). He indicates that his symptoms affect his ability to remember things, complete tasks, concentrate, understand, and follow instructions (Exhibit B1E, p.6). For example, he reports an inability to pay attention to a task for more than one hour at a time (Exhibit B1E, p.6).

AR 25 (emphasis added). The ALJ also noted that Plaintiff has "chronic angle-closure glaucoma of the left eye, status-post a March 2019 aqueous shunt, August 2019 micropulse transscleral cyclophotocoagulation, and May 2021 penetrating keratoplasty" as well as "central corneal opacity of the both eyes"—conditions Plaintiff claims cause difficulty with depth perception due to a limited field of vision, and the inability to stare into bright lights. AR 26.

The ALJ determined that while these medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms, his statements about their intensity, persistence and limiting effects are not entirely consistent with the medical evidence and other evidence in the record. AR 26. Specifically, the ALJ found opioid-addiction treatment records at "Ideal Option" from May 2019 through October 2019 indicated Plaintiff continued to use methamphetamine and heroin for periods of this treatment, yet his mental status examinations throughout revealed relatively normal mood, affect, and speech; no evidence of visual or auditory hallucinations; and only occasional indications of anxiousness and restlessness. *Id*.

Next, the ALJ found that Plaintiff attended a consultative examination at Sea Mar Community Health Center in August 2019 in preparation for formal treatment admission, but then failed to respond to calls to transfer into the program. *Id*.

1    Plaintiff did undergo additional treatment at Lake Whatcom Residential & Treatment

2    Center (Whatcom), starting in October 2019, records for which the ALJ found suggested

3    Plaintiff's "impairments are amenable to proper medical management" as they indicate Plaintiff

4    was doing "pretty good" or "great" on his prescribed medical regimen there, generally denying

5    auditory and visual hallucinations or any significant depression or anxiety. AR 26. Further, the

6    ALJ noted that Plaintiff's providers at Whatcom described Plaintiff's: "(1) rapport as

7    appropriate; (2) speech as coherent or normal; (3) insight as good, fair, or appropriate; (4)

8    judgment as good or fair; (5) associations as intact; (6) thought processes as normal [, and]; (7)

9    cognitive function as normal." *Id*.

10    Still, the ALJ found Plaintiff suffered "periods of non-compliance" at Whatcom, such as

11    in May 2021, when the ALJ found the record indicates "several no shows to case management

12    appointments", and in June 2021 when his treating provider appointment was canceled "due to a

13    lack of engagement with case management". AR 27. The ALJ concluded that these periods

14    suggest Plaintiff's "symptoms [were] not as severe as alleged" during these times. *Id*.

15    The ALJ summarized his conclusion about Plaintiff's substance abuse treatment records

16    to be that when Plaintiff abstains from using "illicit substances, [his] mental health symptoms

17    have been either absent or mild enough to be considered 'manageable'." *Id*. at 27. Thus, when

18    considering Plaintiff's hearing testimony that he experiences daily hallucinations and panic

19    attacks as well as severe depressive episodes three to four times a week that cause him to stay in

20    bed, the ALJ rejected these claims as not supported by objective medical evidence of Plaintiff's

21    symptomology when he is medically compliant and sober. *Id*.

22    Notwithstanding the above, the ALJ found that even when Plaintiff was "abusing illicit

23    substances", such as in August 2019, he reported being able to "cope with [his auditory

24

hallucinations]", and in October 2019 to "keep them at bay" successfully enough to work as a landscaper. AR 27. By December 2019 the ALJ found Plaintiff reported only experiencing auditory hallucinations "now and then"; by March 2020, "no hallucinations"; in June and July 2020 the ALJ found Plaintiff claimed to be hearing "distant" or "very distant" voices, and then did not report any further auditory hallucinations in 2020. *Id*. The ALJ found the next record of Plaintiff reporting hallucinations was in June 2021 when the record reflects that he was doing "really well" and did not mention auditory hallucinations. *Id*. However, the ALJ stated that within "a few weeks" of this report Plaintiff claimed the auditory hallucinations were back, but were "not affecting [him] like they used to". *Id*.

In August 2021 the ALJ found the record showed Plaintiff reported "some of his symptoms were persisting but that they were manageable." *Id*. By contrast, the ALJ noted that on that same day in August 2021 Plaintiff testified at his hearing in this case to drastically different symptoms. *Id*.

Finally, regarding Plaintiff's severe visual impairments, the ALJ found Plaintiff retains visual acuity in his right eye from 20/60 to 20/100, without correction, but his left eye vision was "severely decreased" throughout most of the relevant period though it improved after surgery in May 2021, resulting in at least 20/100 vision without correction. *Id*. The ALJ also noted that Plaintiff generally denied pain or discomfort in either eye. *Id*.

The ALJ found Plaintiff's activities of daily living were at odds with the alleged severity of his mental impairments. AR 28. Specifically, the ALJ found Plaintiff retains the ability to prepare simple meals, make the bed, vacuum, use public transportation, and handle a savings account. *Id*. He also does not require special reminders to care for his personal needs or take his

1   medications. *Id*. And, significantly, the ALJ found Plaintiff worked as a landscaper during the

2   relevant period and also obtained his driver's license. *Id*.

3       2.   Testimonial Evidence Standard

4       "The ALJ conducts a two-step analysis to assess subjective testimony where, under step

5   one, the claimant must produce objective medical evidence of an underlying impairment or

6   impairments that could reasonably be expected to produce some degree of symptom."

7   *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks

8   omitted). "If the claimant meets this threshold and there is no affirmative evidence of

9   malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms

10  only by offering specific, clear and convincing reasons for doing so." *Id*.

11      When assessing a claimant's credibility the ALJ may consider "ordinary techniques of

12  credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

13  symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273,

14  1284 (9th Cir. 1996). The ALJ may also consider if a claimant's complaints are "inconsistent

15  with clinical observations[.]" *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294,

16  1297 (9th Cir. 1998).

17      However, affirmative evidence of symptom magnification, or malingering, relieves an

18  ALJ from the burden of providing specific, clear, and convincing reasons for discounting a

19  claimant's testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Morgan v. Comm'r

20  of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Berry v. Astrue*, 622 F.3d 1228, 1235

21  (9th Cir. 2010) (upholding finding where ALJ "pointed to affirmative evidence of malingering").

22      Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*,

23  694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility

24  determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may

1  not reverse a credibility determination where that determination is based on contradictory or

2  ambiguous evidence. *Id*. at 579.

3     3.  <u>Analysis</u>

4       Plaintiff argues the ALJ's assessment of his testimony is erroneous because he fails to

5  "provide any conflicting clinical evidence to discredit [Plaintiff's] symptom testimony other than

6  cherry picked normal mental status exams" whereas the "longitudinal record shows [P]laintiff[']s

7  symptoms wax and wane, but he consistently continues to suffer from the symptoms of his

8  mental health impairments and has very poor eyesight." Dkt. 11 at 7.  Plaintiff also argues that

9  his activities of daily living are not a legally sufficient reason to reject his testimony that "the

10  voices and his anxiety are very distracting and while [sic] he has good days and bad days" his

11  medication does not "stop the voices or anxiety, they just control his depression where his 'not

12  thinking about suicide' and still feels 'doom'". Dkt. 11 at 8-9. Finally, Plaintiff claims the ALJ

13  should have inquired about whether Plaintiff's medications cause side effects. *Id*. at 9.

14       Defendant responds, first, that the ALJ properly found Plaintiff's part-time work

15  undermined his claims of disabling symptoms. Dkt. 17 at 3 (citing *Ford v. Saul*, 950 F.3d 1141,

16  1156 (9th Cir. 2020) and 20 C.F.R. § 416.929(c)(3)(permitting ALJ to consider claimant's work

17  record)). Second, Defendant insists the ALJ properly concluded that Plaintiff's activities of daily

18  living were inconsistent with his claimed symptoms as they were the type of activities the Ninth

19  Circuit has found indicate a claimant might still be capable of performing the basic demands of

20  competitive, remunerative, unskilled work on a sustained basis. *Id*. at 4 (citing *Stubbs-Danielson*

21  *v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008)(discussing daily activities of cooking, house

22  cleaning, doing laundry, and helping spouse manage finances). Third, Defendant argues

23  Plaintiff's allegedly disabling vision problems are belied by his ability to obtain a drivers license

24  during the relevant period. Fourth, Defendant states the ALJ correctly determined that Plaintiff's

1  improvement with treatment during the relevant period undermines his claims of ongoing

2  symptoms he experienced while not in treatment and/or still actively using illicit drugs. Dkt. 17

3  at 5 (citing *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017)("evidence of medical

4  treatment successfully relieving symptoms can undermine a claim of disability"). Finally,

5  Defendant argues the objective medical evidence even during Plaintiff's periods of admitted

6  methamphetamine and heroin use never supported the degree of limitations he alleged, as those

7  records reveal only occasional problems with depression and anxiety. Dkt. 17 at 8.

8        The Court concurs with Defendant to find the ALJ identified substantial evidence to

9  support his conclusion that Plaintiff's claims of ongoing panic attacks lasting up to three hours,

10  four depressive episodes per week, persistent hallucinations, problems completing tasks,

11  concentrating, understanding, and following instructions, and disabling depth perception issues

12  were clearly and convincingly undermined by: (1) Plaintiff's ability to work as a landscaper

13  during the relevant period; (2) his post-surgical improvement in vision during the relevant period

14  leading to Plaintiff obtaining a driver's license; (3) his activities of daily living, and; (4)

15  significant improvement in his mental health following intense drug abuse rehabilitation

16  treatment and Plaintiff's abstention from drug abuse. *See* AR 259-260, 588, 593, 598-607, 608,

17  713, 877, 1148, 1211, 1229, 1231, 1244, 1246, 1252, 1260, 1278, 1287, 1300, 1302, 1308, 1315,

18  1323.

19        The Court has reviewed the record and finds Plaintiff's claim the ALJ "cherry picked"

20  examples of improvement is unpersuasive, as the predominate theme in the medical evidence is

21  clearly improvement in symptomology with abstention from illicit substances and committed to

22  sobriety. *See id*. The Court also finds no record citations by Plaintiff to countervailing evidence.

23  Finally, the Court finds no merit to Plaintiff contention that the ALJ's duty to further develop the

24

1  record of "waxing and waning" mental health symptoms was triggered here, as the ALJ did not

2  perceive a conflict that required further development for resolution. *See*, *Tonapetyan v. Halter*,

3  242 F.3d 1144, 1150 (9th Cir. 2001)("Ambiguous evidence, or the ALJ's own finding that the

4  record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to

5  "conduct an appropriate inquiry."). In any event, the Court must uphold the ALJ's conclusion if

6  the evidence is susceptible to more than one rational interpretation. *Tommasetti v. Astrue*, 533

7  F.3d 1035, 1038 (9th Cir. 2008). Accordingly, the ALJ finds the ALJ's assessment of Plaintiff's

8  testimony was legally sufficient and supported by substantial evidence.

9  **B. Medical Evidence**

10        Plaintiff argues the ALJ improperly rejected some of the medical evidence.

11     1.  Medical Evidence Regulations

12        Under the revised regulations, ALJs "will not defer or give any specific evidentiary

13  weight, including controlling weight, to any medical opinion(s) or prior administrative medical

14  finding(s) …". 20 C.F.R. §§ 416.1520c(1) and 416.920c(a). Instead, ALJs must consider every

15  medical opinion or prior administrative medical findings in the record and evaluate each

16  opinion's persuasiveness using a list of factors listed. *See*, 20 C.F.R. §§ 416.1520(c)(a) and

17  416.920c(a). The two most important factors are the opinion's "supportability" and

18  "consistency." *Id*. ALJs must explain "how [they] considered the supportability and consistency

19  factors for a medical source's medical opinions or prior administrative medical findings in [their]

20  . . . decision." 20 C.F.R. §§ 416.1520c(b)(2) and 416.920c(b)(2).

21        "Supportability means the extent to which a medical source supports the medical opinion

22  by explaining the 'relevant … objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785,

23  791-2 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)); *see also*, 20 C.F.R. § 416.920c(c)(1).

24  "Consistency means the extent to which a medical opinion is 'consistent … with the evidence

1  from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (citing 20 C.F.R. §

2  404.1520c(c)(2)); *see also*, 20 C.F.R. § 416.920c(c)(2).

3      2.  <u>Analysis</u>

4      *a.  Kacie Hamreus*

5         In April 2019 Physician's Assistant Kacie Hamreus (Hamreus) opined that Plaintiff

6  retains the ability to perform sedentary work, but experiences a "[m]arked limitation" performing

7  activities within a schedule, maintaining regular attendance, and being punctual within

8  customary tolerances. AR 30.

9         The ALJ was not persuaded by Hamreus's opinion "as it is inconsistent with the

10  relatively normal mental status examinations throughout the record", as well as "the benign

11  musculoskeletal findings throughout the record" reflecting no musculoskeletal deformities, an

12  intact and normal gait, and no evidence of decreased strength or diminished sensation. *Id*.

13  Moreover, the ALJ noted that Hamreus did not have the opportunity to review and consider the

14  entire medical record, and did not give a detailed explanation in support of her opinion. AR 29-

15  30.

16         Plaintiff argues the ALJ failed to provide "specific, legitimate reasons supported by

17  substantial evidence" for assigning little weight to Hamreus's opinion. Dkt. 11 at 6 (citing AR

18  372). Plaintiff also states the ALJ did not have a "clear and convincing reason to discredit his

19  opinion because there is no discussion of how the other records might affect his decision". *Id*.

20         Defendant asserts Plaintiff's argument is conclusory and fails to rely upon the

21  Commissioner's revised regulations (set forth above) which apply to this case and  require the

22  ALJ to focus on the medical source opinion's "supportability" and "consistency", contrary to

23  Plaintiff's employment of a different standard. Dkt. 17 at 11-12. Regarding supportability,

24  Defendant argues the ALJ accurately found Hamreus failed to cite objective medical evidence or

1   offer an explanation that supported her opinion, and she also appeared to be unaware of

2   Plaintiff's 2021 eye surgery, which relieved many of his vision problems and allowed him to

3   obtain a driver's license. Dkt. 17 at 11. As for consistency, Defendant argues the ALJ correctly

4   concluded that Hamreus's opinion was inconsistent with Plaintiff's relatively normal exams

5   throughout the record. *Id*.

6        The Court concurs with Defendant, and finds the ALJ cited substantial evidence upon

7   which to conclude that Hamreus's opinion lacked supportability (AR 28, 713, 1126, 1132, 1139-

8   40) and consistency (AR 26, 30, 408, 591, 617, 658, 673, 682, 687, 691, 695, 699, 736, 742, 825,

9   922, 946, 1231, 1246, 1254, 1279-1280). As the ALJ stated, Hamreaus's opinion reveals she did

10  not have the opportunity to review most of the medical record, and was clearly unaware of

11  significant facts regarding the therapies Plaintiff underwent during the relevant period and the

12  improvement he showed as a result. Accordingly, the Court finds no merit to Plaintiff's

13  argument, which is based on incorrect standards.

14        *b.  State Agency Medical Opinions*

15        In formulating Plaintiff's RFC the ALJ credited the opinions of state agency physical

16  health consultants Robert Hander, M.D. (Hander) and Charles Wolfe, M.D. (Wolfe). AR 28-29.

17  Both opined that Plaintiff retains the ability to frequently climb ramps and stairs and occasionally

18  climb ladders, ropes, and scaffolds; that Plaintiff's depth perception, accommodation, near acuity

19  and far acuity is limited, and; that Plaintiff should avoid exposure to hazards. *Id*. The ALJ found

20  Hander and Wolfe's opinions to be "consistent with the examination notes throughout the

21  record" and supported by detailed explanations. *Id*.

22        The ALJ also credited the opinions of state agency mental health consultants Leslie

23  Postovoit, Ph.D. (Postovoit) and Dan Donahue, Ph.D. (Donahue) who both opined that Plaintiff

24  retains the ability to carry out simple, routine instructions, maintain concentration for up to two

1  continuous hours, maintain adequate attendance, and complete a normal workday/workweek. AR

2  29. In addition, Postovoit and Donahue opined that Plaintiff retains the ability to occasionally

3  interact with others and adapt to normal, routine changes in a competitive work environment. *Id*.

4  The ALJ found Postovoit and Donahue's opinions to be consistent with the relatively normal

5  mental status examinations throughout the record in which his treating providers generally

6  described his: (1) rapport as appropriate; (2) speech as coherent or normal; (3) insight as good,

7  fair, or appropriate; (4) judgment as good or fair; (5) associations as intact; (6) thought processes

8  as normal; and, (7) cognitive function as normal. *Id*. Finally, the ALJ found both opinions

9  supported by a detailed explanation. *Id*.

10       Plaintiff contends the ALJ failed to provide clear and convincing reasons to explain how

11  these doctor's opinions show he "could complete a normal work week due to his mental health

12  symptoms." Dkt. 11 at 6-7. To support this conclusion, the Plaintiffs asserts the ALJ "cherry

13  picked normal mental status exams" and failed to consider that he "consistently continues to

14  suffer from the symptoms of his mental health impairments and has very poor eyesight." Dkt. 11

15  at 7. With regard to the RFC, Plaintiff agrees some of the limitations are supported by the record,

16  but the ALJ erred by not including "off-task limitations due to mental health limitations." *Id.*

17       Defendant correctly responds that the Commissioner's revised regulations (set forth

18  above) apply to this case, requiring the ALJ to focus on the medical source opinion's

19  "supportability" and "consistency", contrary to Plaintiff's argument that other standards apply.

20  Dkt. 17 at 12. Regarding supportability, Defendant states the ALJ found all of these sources'

21  opinions were supported by discussion of relevant medical evidence as well as Plaintiff's

22  activities, and explained why they believed the functional limitations they assessed were

23

24

1    accurate. *Id.* As for consistency, Defendant states that all state agency reviewing opinions

2    credited by the ALJ were consistent with objective medical evidence in the record. *Id.*

3        The Court concurs with Defendant and finds the ALJ pointed to substantial evidence to

4    support his legally valid reasons for crediting Hander, Wolfe, Postovoit, and Donahue. *See*, AR

5    106-108, 110-114, 124-131, 591, 658, 673, 691, 695, 699, 742, 934, 1000, 1030, 1033, 1036,

6    1039, 1055, 1061, 1077, 1080, 1083, 1100, 1103, 1122, 1132, 1141, 1211, 1213, 1229, 1231,

7    1246, 1254, 1262, 1279-1280, 1288, 1302, 1310, 1317, 1325, 1367, 1385, 1399, 1407, 1415,

8    1432-1433, 1441, 1455, 1463. Their review of most of the record evidence during the relevant

9    period resulted in reasonable determinations regarding Plaintiff's physical and mental functional

10    abilities, supported by thorough explanations and backed by their expertise in social security

11    regulations. Accordingly, the Court finds no merit to Plaintiff's argument based on an erroneous

12    understanding of the applicable regulations.

13    **C.  Step Five**

14        Plaintiff' final allegation of error is that the ALJ's step five finding that Plaintiff is not

15    disabled is erroneous because the ALJ failed to credit vocational expert (VE) testimony in

16    response to some of the ALJ's "alternative" hypothetical questions posed to the VE. Dkt. 11 at

17    13-14.

18        The burden at step five of the sequential evaluation shifts to the Commissioner to show

19    that, taking into account a Plaintiff's age, education and vocational background, Plaintiff can

20    perform substantial gainful work in the national economy. *Pinto v. Massanari*, 249 F.3d 840, 844

21    (9th Cir. 2001). "There are two ways for the Commissioner to meet [the] Step Five burden: (1)

22    the testimony of a vocational expert; or (2) by reference to the Medical-Vocational Guidelines at

23    20 C.F.R. pt. 404, subpt. P, app. 2." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

24

Here, at step five, the ALJ asked the VE whether jobs exist in the national economy for an individual of Plaintiff's age, with his education, work experience, and RFC. AR 24-25. The VE testified that such an individual would be able to perform the requirements of representative occupations such as Dry Janitor, Church Custodian, and Housekeeping Cleaner. AR 30-31. Accordingly, the ALJ concluded that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and therefore was not disabled. *Id*.

Plaintiff argues the ALJ erred "because he improperly failed to provide legally sufficient reasons for rejecting VE testimony regarding the impact of off-task and absenteeism limitations given the ALJ's [hypothetical question]." Dkt. 11 at 12. However, the ALJ included off-task and absenteeism limitations in "alternative" hypothetical questions to the VE in order to create a thorough and complete record—those limitations were not included in Plaintiff's RFC. AR 25; *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001)(an ALJ may "reject restrictions in a hypothetical question that are not supported by substantial evidence"). Having already thoroughly evaluated and rejected the assertions of error upon which Plaintiff objects to the ALJ's RFC, this Court finds the ALJ properly credited the VE's testimony that a person with Plaintiff's RFC would not be disabled as defined by the guidelines.

## V. CONCLUSION

For the foregoing reasons the Court hereby AFFIRMS Defendant's decision denying benefits.

Dated this 5th day of July, 2023.

David W. Christel
United States Magistrate Judge